UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AMERIPRIDE SERVICES, INC.,
A Delaware corporation,

        Plaintiff,

   v.

VALLEY INDUSTRIAL SERVICE, INC.,
a former California corporation,
et al.,

        Defendants.
_____/
AND CONSOLIDATED ACTION AND
CROSS- AND COUNTER-CLAIMS.
_____/

NO. CIV. S-00-113 LKK/JFM

O R D E R

    This case is before the court on defendant Texas Eastern Overseas, Inc.'s ("TEO"), motion for Summary Judgment.[1] The court

---

[1] Defendant has brought a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. Plaintiff requests that this court consider evidence from outside the pleadings and therefore evaluate TEO's motion pursuant to Federal Rule of Civil Procedure 56, motion for summary judgment. Defendant states that it does not oppose this request. For this reason, we evaluate the evidence pursuant to Rule 56.

1

resolves the motion on the papers and after oral argument. For the reasons set forth below, the court grants defendant's motion as to lack of capacity to be sued and stays this case so that plaintiff may petition the Delaware Court of Chancery to reinstate defendants.

## I. BACKGROUND

Plaintiff AmeriPride Services, Inc. is the current owner of an industrial laundry facility ("Facility") in Sacramento, California. AmeriPride brought an initial lawsuit against the previous owners and/or operators of the Facility for contamination in violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") in 2000, along with various state law claims. In 2007, this court approved settlement between Plaintiff and all defendants except Valley Industrial Services, Inc. ("VIS") and Texas Eastern Overseas, Inc. ("TEO"). (Order approving Settlement of Pls. (June 18, 2007).)

VIS built the facility in 1960 and used it to operate an industrial laundry. Petrolane, Inc. purchased VIS in the early 1970's and thereafter operated Valley as a wholly-owned and controlled subsidiary. Petrolane sold the facility to Mission Industries in 1983. Mission sold the facility to Welch's Overall Cleaning Co., Inc. "at or about the same time." Welch's merged into AmeriPride in 1998. In 1984 (after Petrolane had sold the facility), Texas Eastern Corporation purchased all shares of Petrolane.

AmeriPride maintains this suit against VIS and TEO for alleged

contamination of the facility.[2]  In March of 1997, AmeriPride's environmental consultant found Perchloroethylene ("PCE") in the soil and groundwater beneath the facility.  Plaintiff alleges that defendants illegally discharged and released PCE during their respective ownership and operation of the Facility.  Plaintiff also alleges that the use of PCE at the Facility was discontinued at the time Welch's purchased the facility in 1983.

Ameripride's third amended complaint named fourteen defendants, including TEO.  Throughout the proceedings, TEO and six other defendants were represented by the same counsel.  During representation of these defendants, counsel filed three different answers for their seven clients, including one specific to TEO. (Docs. No 123-125.)  In each of these filings, TEO asserted that it was "a dissolved Delaware corporation and thus lacks capacity to be sued."  Counsel also filed a counterclaim on behalf of TEO in its answer to Ameripride's Third Amended Complaint, for contribution under CERCLA, contribution under HSAA, comparative equitable indemnity and equitable apportionment and contribution. In addition, TEO filed a cross-claim and cross-complaint for contribution under CERCLA, equitable apportionment and equitable indemnity.  The counter- and crossclaims stated that TEO made them

---

[2] In their Memorandum of Points and Authorities in Support of Entry of Judgment, Approval of Settlement, and Entry of contribution Bar Order, Plaintiffs acknowledge that defendant VIS merged into other entities that eventually dissolved and TEO "was dissolved some time ago with no assets other than potentially rights under certain insurance policies." (Pl.'s Mem. of P. & A. in Supp. of Entry of J. 2 n.2.)

"to preserve its rights and without waiver of any of its rights." TEO also propounded discovery and participated in depositions.

In 2007, this court approved settlement of Plaintiff and all defendants except Valley Industrial Services, Inc. ("VIS") and Texas Eastern Overseas, Inc. ("TEO"). (Order approving Settlement of Pls. (June 18, 2007).) Recently, TEO's insurers retained counsel to represent the interests of TEO and VIS, Inc.

The parties agree that because VIS was merged into corporations which eventually merged into TEO, VIS has no separate existence from TEO. TEO, which dissolved as a corporation in 1992, moves for summary judgment on AmeriPride's complaint based on lack of capacity to be sued.

## II. STANDARD

**A.  Standard for Summary Judgment pursuant to Federal Rule of Civil Procedure 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes

4

1  |  demonstrate the absence of a genuine
2  |  issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its

1  pleadings, but is required to tender evidence of specific facts in
2  the form of affidavits, and/or admissible discovery material, in
3  support of its contention that the dispute exists.  Fed. R. Civ.
4  P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l
5  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
6  1998).  The opposing party must demonstrate that the fact in
7  contention is material, i.e., a fact that might affect the outcome
8  of the suit under the governing law, Anderson v. Liberty Lobby,
9  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of
10 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
11 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
12 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
13 genuine, i.e., the evidence is such that a reasonable jury could
14 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-
15 49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200
16 F.3d 1223, 1228 (9th Cir. 1999).

17        In the endeavor to establish the existence of a factual
18 dispute, the opposing party need not establish a material issue of
19 fact conclusively in its favor.  It is sufficient that "the claimed
20 factual dispute be shown to require a jury or judge to resolve the
21 parties' differing versions of the truth at trial."  First Nat'l
22 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
23 Thus, the "purpose of summary judgment is to 'pierce the pleadings
24 and to assess the proof in order to see whether there is a genuine
25 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
26 Civ. P. 56(e) advisory committee's note on 1963 amendments); see

6

1 also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
2 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

3 In resolving the summary judgment motion, the court examines
4 the pleadings, depositions, answers to interrogatories, and
5 admissions on file, together with the affidavits, if any. Rule
6 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093
7 (9th Cir. 1999). The evidence of the opposing party is to be
8 believed, see Anderson, 477 U.S. at 255, and all reasonable
9 inferences that may be drawn from the facts placed before the court
10 must be drawn in favor of the opposing party, see Matsushita, 475
11 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
12 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County
13 of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless,
14 inferences are not drawn out of the air, and it is the opposing
15 party's obligation to produce a factual predicate from which the
16 inference may be drawn. See Richards v. Nielsen Freight Lines, 602
17 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
18 (9th Cir. 1987).

19 Finally, to demonstrate a genuine issue, the opposing party
20 "must do more than simply show that there is some metaphysical
21 doubt as to the material facts. . . . Where the record taken as a
22 whole could not lead a rational trier of fact to find for the
23 nonmoving party, there is no 'genuine issue for trial.'"
24 Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

26 Defendant argues that, as a long-dissolved corporation, it

lacks the capacity to be sued. Plaintiff's primary argument is that TEO waived this defense by actively participating in the litigation and by failing to pursue this defense at an earlier time. Accordingly, although the motion before the court is defendant's motion for summary judgment, the court's analysis is structured around the question of whether plaintiff has succeeded in arguing waiver.

**A)   Corporate Lack of Capacity to Be Sued**

Federal Rule of Civil Procedure 17(b) provides that a corporation's capacity to be sued is determined by reference to the law of the state in which it is incorporated. Because TEO (which VIS was merged into) is a Delaware corporation, Delaware law determines TEO's capacity to be sued.

Delaware Code Section 278 addresses the continuation of a corporation after dissolution and reads in relevant part:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, <u>for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct</u>, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business . . .

8 Del. Code Ann. § 278 (emphasis added).

Section 278 balances two purposes, it inhibits dissolved corporations from avoiding their liabilities, and it allows corporations to wind up their business by providing a definite point in time after which no new lawsuits can be brought. <u>Johnson</u>

8

v. Helicopter & Airplane Services Corp., 404 F. Supp 726 (D. Md. 1975).

Here, TEO dissolved under Delaware law in 1992. In 1995, the three year winding up period ended. Ameripride filed this lawsuit in 2000.

Plaintiff's only contention of the merits of defendants' incapacity defense relies on Section 279 of the Delaware Code. Section 279 allows a party to petition the Court of Chancery, demonstrating good cause, to appoint a receiver to "take charge of the corporations' property and to collect the debts and property due and belonging to the corporation, with power to prosecute and defen[d], in the name of the corporation . . . all suits which may be necessary for the final settlement of the unfinished business of the corporation." Del. Code Ann. Tit. 8, § 279 (2008). Although this provision demonstrates that the three year limit is not absolute, it provides a specific procedure for parties seeking to sue outside this limit, and plaintiff has not attempted to follow this procedure here.  Plaintiff has not filed any such petition with the Chancery Court. Therefore, on the merits, defendants lack the capacity to be sued.  If defendants have not waived this argument, plaintiff's claim against defendants must be dismissed.

**B)   Lack Of Capacity To Be Sued Is A Waivable Defense**

The parties apparently agree that the defense that a corporation lacks the capacity to be sued is a waivable defense. The court agrees.

One factor supporting this conclusion is that Federal Rule of

9

Civil Procedure 9(a) states that a party must assert a lack of capacity defense in its first responsive pleading by specific negative averment, including any supporting particulars exclusively within the pleader's knowledge. Failure to raise capacity in a responsive pleading constitutes waiver. See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160, F.3d 925, 936 (2d Cir. 1998) ("Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised."). This court sees no reason why corporate capacity should be treated differently than other forms of capacity, and this approach seems to have been adopted by circuit courts that have addressed the issue. See Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc., 929 F.2d 343, 345 (7th Cir. 1991) (defense of corporate plaintiff's incapacity to sue waivable under Fed. R. Civ. Pro. 9(a)), Trounstine v. Bauer, Pogue & Co., 144 F.2d 379, 383 (2d Cir. 1944) (Delaware corporation waived its defense of incapacity to be sued by not raising this issue before trial). See also Swaim v. Moltan Co., 73 F.3d 711, 718 (7th Cir. 1996) (analogizing corporate defendant's defense of lack of capacity to be sued to a challenge to personal jurisdiction).

Another reason to treat corporate incapacity to be sued as waivable is that it has been analogized to a statute of limitations defense. Smith-Johnson S.S. Corp. v. United States, 231 F. Supp. 184, 187 (D. Del. 1964). Smith-Johnson specifically drew this comparison based on consideration of Delaware's corporation statute and its underlying policy, but did not specifically address whether

incapacity was an affirmative, waivable defense.  Id.

**C)   Defendant's Arguments Related to Waiver by Plaintiff Are Irrelevant**

Defendant's reply brief argues, apparently thinking that what's good for the goose is good for the gander, that it is plaintiff who has waived his rights, by failing to initiate suit until eight years after defendant dissolved.  This argument goes to the merits of the lack of capacity defense, not to plaintiff's waiver argument.  Plaintiff's delay in filing suit could be construed as a waiver of the right to sue, inasmuch as the delay gave rise to a lack of capacity defense when the suit was filed. However, plaintiff's delay prior to the initiation of this suit has no bearing on whether defendants' actions subsequent to that initiation constituted waiver of the capacity defense.  Nor does the earlier delay affect whether plaintiff can argue waiver.

**D)   Have Defendants Waived Their Right to Assert Lack of Capacity Here?**

Having established that the defense of a corporation's lack of capacity is waivable, the court turns to whether this defense was actually waived in this case.

**1)   Defendant Did Not Waive Under FRCP 9(a)**

Federal Rule of Civil Procedure 9(a)(1) states that "a pleading need not allege . . . a party's capacity to sue or be sued."  Therefore, to raise incapacity as an issue, a party must do so in a responsive pleading; failure to do so forfeits any incapacity argument.  De Saracho v. Custom Food Mach., Inc., 206

11

F.3d 874, 878 (9th Cir. 2000).

Here, defendant asserted the affirmative defense of lack of capacity in their answers to plaintiff's first, second and third amended complaints. (Docket Nos. 64, 85, 125.) For example, defendant's answer to the first complaint stated:

> Forty-First Affirmative Defense (Lack of Capacity): TEO is a dissolved Delaware corporation and thus lacks capacity to be sued, rendering this action void.

(Answer to FAC, 38:1-4.)

These statements are themselves sufficient to satisfy FRCP 9(a). The primary purpose of this rule is to provide notice to the opposing party, and once notice of the defense is provided, FRCP 9 itself does not require a party to file an early dispositive motion based on the defense. See Silliman v. Du Pont, 302 A. 2d 327, 330 (Del. Super. Ct. 1972) (citing 5 Wright & Miller, Federal Practice and Procedures Section 1295)).

**2) Defendants' Affirmative Litigation Behavior Did Not Constitute Waiver**

Plaintiff's waiver argument relies in large part on defendant's role in the previous eight years of litigation. This court is not aware of any case holding that incapacity to sue or be sued, once properly raised in compliance with FRCP 9(a), was subsequently waived, whether through a party's action or inaction. Nonetheless, courts have recognized that defendants' litigation behavior can constitute waiver of at least two other defenses: sovereign immunity and a right to compel arbitration. Both

contexts, however, carry with them significantly different tests for waiver.  Therefore, the court first decides, assuming waiver of subsequent litigation conduct is appropriate, which test is more appropriate here.  The court then determines whether that test is satisfied.

### i) What Type of Litigation Acts Give Rise to Waiver?

One possible analogy is between incapacity to be sued and sovereign immunity.  Sovereign immunity is also a waivable defense. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238 (1985). A state may waive its sovereign immunity in many ways, including through a statute (such as a state tort claims act), through ratification of the federal constitution (such as consent to suit under statutes passed under section 5 of the Fourteenth Amendment), or through consent manifested as acceptance of a condition accompanying federal funds.  Similarly, courts have held that certain litigation behavior manifests a constructive consent to suit.

Such behavior typically consists of affirmative conduct by the state.  For example, when a state removes a case to federal court, that state waives the right to assert the defense of immunity to suit in that court.  Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 624 (2002). Pro-active, voluntary appearance before a federal court also constitutes waiver. Lapides surveyed earlier Supreme Court cases finding waiver of sovereign immunity by voluntary appearance in federal court as an intervenor, Clark v. Barnard, 108 U.S. 436 (1883) or by voluntary filing of a

claim against a bankrupt party, Gardner v. State of New Jersey, 329 U.S. 565, 574 (1947). Lapides, 535 U.S. at 623.

Each of these examples shares an affirmative act by the state that submits to the jurisdiction of the federal courts. In contrast, the law is less clear when a state sits on its hands without affirmatively invoking federal jurisdiction. The Supreme Court has held that a state is free to raise the defense of sovereign immunity for the first time on appeal. Edelman v. Jordan, 415 U.S. 651, 677 (1974) (citing Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466-67 (1945)) (explaining that sovereign immunity is sufficiently close to a jurisdictional bar to be raised on appeal). However, the Ninth Circuit has adopted a narrow interpretation of Edelman, holding that in some cases, "by appearing and litigating the merits of the controversy without objection, the state [may] waive[]its Eleventh Amendment immunity." Hill v. Blind Indus. & Servs., 179 F.3d 754, 762 (9th Cir. 1999). "The Eleventh Amendment was never intended to allow a state to appear in federal court and actively litigate the case on the merits, and only later belatedly assert its immunity from suit in order to avoid an adverse result." Hill, 179 F.3d at 763. See also Lapides, 535 U.S. at 620 (stating that the doctrine of waiver through litigation behavior "rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference."). Hill held that the state had waived sovereign immunity by litigating the case on the merits and then seeking to

assert sovereign immunity on the first day of trial, because the state used the delay to "hedge its bets on the trial's outcome." Id. at 756, 763.  Thus, although sovereign immunity can normally only be waived by litigation behavior that affirmatively invokes the federal court's jurisdiction, egregious other behavior can also constitute waiver.

In contrast with sovereign immunity, a right to compel arbitration can be waived by more routine participation in litigation.  Courts interpreting the Federal Arbitration Act have held that parties may establish waiver of a right to arbitrate by showing: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986).  Courts have found that defendants acted "inconsistent with that existing right" by participating in discovery and motion practice for periods ranging from eighteen months to four years. Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3rd Cir. 2007), Restoration Pres. Masonry, Inc. v. Grove Eupoe Ltd., 325 F.3d 54, 61-62 (1st Cir. 2003), Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576-78 (2d Cir. 1991).  These cases found prejudice to the party opposing arbitration in the mere expense of litigation during these delays.  Ehleiter, 482 F.3d at 224-25, Restoration Pres. Masonry, Inc., 325 F.3d at 61.

Thus, the standards for waivers of sovereign immunity and arbitration rights are different enough that they cannot be thought

15

of as providing a single framework for waiver of issues through litigation behavior.  Instead, they describe different tests, and it is clear that the decision of which to apply will have a large impact on this case.  This court concludes that the sovereign immunity cases provide the more appropriate analogy, for two reasons.  First, the right at issue is a total defense to suit. This right closely resembles sovereign immunity, whereas a right to compel arbitration is merely a right to have the same dispute heard in a different forum.  Second, FRCP 9(a) already specifies requirements for raising or waiving incapacity.  To the extent that a doctrine of waiver through litigation behavior necessarily supplements that framework, the stricter doctrine is more appropriate. In light of the above, waiver of incapacity occurs only in the case of clearly inconsistent conduct of the sort required to waive sovereign immunity.

**ii)   Whether Litigation Acts Constituted Waiver in This Case**

Plaintiffs argue that defendant waived their incapacity defense in two very closely related ways.  One is that defendant filed counterclaims, implicitly asserting that defendant had the capacity to countersue, and therefore the capacity to be sued.  The other is that by participating in eight years of litigation, defendant had ample opportunity to raise this issue, yet failed to do so.  The first argument fails on the facts of this case, and the second fails because it relies on the standard this court has determined to be inapplicable.

The first argument is, in essence, that the defendant cannot

16

ask the court to simultaneously hold both a position and its opposite. In similar situations, the Court has found waiver of sovereign immunity. For example, in Lapides, the Court held that the state could invoke the jurisdiction of the federal courts (by removing the suit) only to insist that the federal courts lacked jurisdiction to hear the suit (under the Eleventh Amendment). Lapides, 535 U.S. at 624.

Here, plaintiff argues that defendant created such a contradiction by filing counterclaims, and thereby implicitly arguing that it had the capacity to sue for these counterclaims but not to be sued itself. However, defendant's counterclaims did not carry such an implication. Defendant's counterclaims were for contribution under CERCLA Section 113(f), Contribution under HSAA Section 25363(e), comparative equitable indemnity, and equitable apportionment and contribution. (Answer of TEO to Pl. Ameripride TAC; Doc. No. 125, 41-49.) Defendant's counterclaims stated that it "makes this counterclaim to preserve its rights and without waiver of any of its rights." (Id.) Defendant has not engaged in any conduct analogous to the removal in Lapides and the cases it cited, defendant has not proactively asked the court to resolve this case.

The second aspect of plaintiff's argument is that defendant waived merely by participating in the case despite earlier opportunity to raise this issue. As noted above, although this type of sitting on one's hands might waive a right to compel arbitration, those cases appear inapplicable here, where the

Federal Rules explicitly provide the requirements for asserting incapacity and defendant fully complied with those requirements. Analogizing instead to sovereign immunity, although the Ninth Circuit held that delay could constitute waiver of sovereign immunity in Hill, that decision rested at least in part on the belief that defendant "hedged its bets" by delaying until it had a peek at the court's likely resolution of the merits of this case. Hill, 179 F.3d at 756. Here, nothing indicates that any such strategy motivated the delay.

Therefore, the court concludes that defendant's litigation behavior did not give rise to a waiver of its defense of incapacity to be sued.

### 3)  Effect of This Court's Scheduling Order

Plaintiff's final argument is that the scheduling order in this case stated that all purely legal matters would be resolved by pretrial motions that would be heard before August 15, 2006. According to this argument, because defendant failed to file a motion on this issue before that time, defendant waived the right to address this issue.

Reviewing the record, the court concludes that defendant's decision not to file a motion prior to the original deadline does not demonstrate an intent to waive this argument. Rather, it is explained by the settlement negotiations proceeding at that time. Absent waiver, the scheduling order itself does not bar the present motion, because defendant requested and was granted a modification of the scheduling order prior to filing the instant motion.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to the issue of defendant's capacity to be sued. This case is STAYED to allow plaintiff to petition the Delaware Court of Chancery to reinstate defendant, pursuant to 8 Del. Code Ann. § 279. The parties are DIRECTED to file notice with this court within ten days of receiving a decision from the Court of Chancery.

IT IS SO ORDERED.

DATED: November 24, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

19