UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIPRIDE SERVICES INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS EASTERN OVERSEAS INC., a Delaware Corporation dissolved,<br><br>Defendant. | No. 2:00-cv-00113-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

This Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") case was brought by Plaintiff AmeriPride Services Inc. ("AmeriPride") against Defendant Texas Eastern Overseas, Inc. ("TEO") to determine how to allocate liability for the parties' contamination of a piece of land. The Honorable Lawrence K. Karlton presided over a twelve-day bench trial, after which TEO appealed some of his legal findings. The Ninth Circuit Court of Appeals vacated the judgment and remanded for further proceedings. Judge Karlton had since retired, and, on remand, the case was referred to the undersigned. Presently before the Court is the parties' further briefing on the remanded issue of "whether the Court should use the pro rata or pro tanto approach to allocate the $3.25 million in settlement payments from Chromalloy and Petrolane to

///

AmeriPride." ECF No. 987.  For the following reasons, the Court now holds that use of the pro rata approach is appropriate.

## BACKGROUND[1]

This action arises out of the contamination of soil and groundwater at and around an industrial laundry facility located at 7620 Wilbur Way in Sacramento, California ("the Facility").  AmeriPride owns the Facility, which was previously owned and operated for seventeen years by Valley Industrial Services, Inc. ("VIS") as an industrial dry cleaning and laundry business.  VIS used perchloroethylene ("PCE") as a solvent in its dry cleaning operations.  During its operations, VIS released PCE into the soil and groundwater.

For part of the time that VIS operated the Facility, it was a wholly owned subsidiary of Petrolane.  VIS eventually merged into Defendant TEO, which expressly assumed VIS's liabilities.  TEO is a Delaware corporation that dissolved in 1992.  It first appeared in this case on July 13, 2000, when it answered and asserted a counterclaim.  In November 2009, a receiver was appointed for TEO for "the sole purpose of establishing the capacity of TEO to be sued in [this action] solely to the extent of its insurance assets . . . ."  That appointment was confirmed in 2010.

In 1983, Petrolane sold the Facility, which subsequently changed ownership several times until AmeriPride became the owner.  AmeriPride did not conduct dry cleaning operations at the Facility, but, during its ownership, there were additional releases of PCE-contaminated water into the soil and groundwater. .  The contamination at the Facility migrated onto a neighboring property owned by Huhtamaki Foodservices, Inc. ("Huhtamaki") and contaminated wells owned by California-American Water Company ("Cal-Am").

///

---

[1] The following facts are taken, sometimes verbatim, from the JSR.

In 1997, AmeriPride found evidence of PCE in the soil under the Facility and reported the discovery to regulatory authorities. In 2002, the California Regional Water Quality Control Board took regulatory control over the investigation at the Facility. Since then, AmeriPride has performed investigation and remediation of the PCE in the soil and groundwater at and near the Facility under the direction of the California Regional Water Quality Control Board. The cleanup is ongoing.

In January 2000, AmeriPride filed this action against VIS, TEO, Petrolane, Chromalloy, and other parties under CERCLA and various state laws to recover costs it incurred responding to the PCE contamination. TEO answered and asserted a counterclaim against AmeriPride.

On July 9, 2002, Cal-Am filed a separate complaint against AmeriPride and TEO seeking recovery of its response costs, damages, and other relief in connection with the contamination of its wells. AmeriPride paid Cal-Am $2 million to settle those claims. Two years later, in July 29, 2004, Huhtamaki sued AmeriPride; AmeriPride later paid Huhtamaki $8.25 million to settle. In addition, in 2006, AmeriPride entered into settlement agreements with Chromalloy and Petrolane for $500,000 and $2.75 million, respectively.

The following year, the Court approved AmeriPride's settlements with Petrolane, Chromalloy and Huhtamaki in an order entering judgment under Federal Rule of Civil Procedure[2] 54(b). AmeriPride's proposed order to approve the settlements asked the Court to adopt the Uniform Comparative Fault Act's ("UCFA") pro rata approach as the federal common law in this case for the purpose of determining the legal effect of the settlement agreements. The Court agreed with AmeriPride and adopted the UCFA in the order approving the settlements.

In 2011, TEO told the Court that it should receive a dollar-for-dollar credit for the settlement payments to AmeriPride. Settlement attempts between TEO and AmeriPride in 2007 were ultimately unsuccessful so AmeriPride pursued its cost recovery claims

---

[2] All subsequent references to "Rule" are to the Federal Rules of Civil Procedure.

against TEO.  In January 2011, AmeriPride filed a motion for summary judgment against TEO seeking an order that TEO was liable to AmeriPride for its response costs, including the settlement amount it paid to Cal-Am and Huhtamaki.  AmeriPride also moved to dismiss TEO's counterclaim for contribution.

On May 12, 2011, the Court granted in part AmeriPride's motion for summary judgment and determined as a matter of law that: (1) TEO is a potentially responsible party liable for AmeriPride's response costs under CERCLA; (2) AmeriPride paid for investigation and remediation costs of $7,750,921 through August 2010, and regulatory oversight costs of $474,730 through September 2010; and (3) AmeriPride's investigation and remediation costs are necessary and consistent with the National Contingency Plan, 40 C.F.R. pt. 300 ("NCP").  With respect to AmeriPride's claims under CERCLA section 107 for amounts it paid in settlement to Cal-Am and Huhtamaki, the Court denied summary judgment.  Specifically, the Court found that the settlement funds were not response costs recoverable under section 107 but that AmeriPride could seek to recover them under section 113(f)(1); and granted leave for AmeriPride to file an amended complaint (which it did on May 24, 2011).  In light of this ruling, the Court did not address whether those settlement amounts were paid to reimburse Cal-Am and Huhtamaki for necessary response costs incurred consistent with the NCP.

The Court also denied several of AmeriPride's other summary judgment claims. Because the Court determined triable issues of fact remained about whether AmeriPride released or disposed of PCE and regarding the equitable allocation of costs between the parties, the Court:  (1) denied AmeriPride's summary judgment to the extent it pertains to allocation of liability on AmeriPride's CERCLA claims; and (2) denied AmeriPride's summary judgment of TEO's counterclaim.

The case proceeded to trial.  The main issue remaining at trial was the equitable allocation of responsibility under AmeriPride's and TEO's respective CERCLA claims. The parties presented their evidence to the Court over the course of a twelve-day bench trial.  On April 4, 2012, the Court entered an order finding, in part, that:

> [T]he total amount subject to equitable apportionment is $18,295,651.00, less $3,250,000 for a total of $15,045,651.00. After including the consultant and other costs of $446,656.84 paid for investigation and remediation at the AmeriPride site since August 2010, and the $16,604.52 paid for regulatory oversight of the AmeriPride site since January 2011, the total amount subject to equitable apportionment is $15,508,912.36.

The Court calculated the total amount subject to equitable apportionment by combining AmeriPride's investigation, remediation, and regulatory oversight costs, then adding the $10.25 million AmeriPride paid in settlement to Huhtamaki and Cal-Am. From this total the Court then deducted the $3.25 million AmeriPride received from settling its claims against Chromalloy and Petrolane, in effect applying the Uniform Contribution Among Tortfeasors Act's ("UCATA") pro tanto approach to equitably account for these settlements.

Next, the Court apportioned the total liability fifty-fifty between TEO and AmeriPride, concluding that "given the facts as the Court has found them . . . the fairest apportionment is to divide responsibility equally." ECF No. 915, at 14.  The Court also issued a declaratory judgment that TEO is responsible for one-half of all future cleanup costs.  To "roughly address" the fact that AmeriPride had "borne all of [the] costs for the many years since the first cleanup order," the Court also ordered TEO to pay prejudgment interest to AmeriPride "in amounts calculated in accordance with 42 U.S.C. § 9607."  The Court stated that the interest accrual date was a matter of equity rather than statutory requisites, and ordered the parties to submit a stipulation as to the amount of interest. The parties filed the interest stipulation on April 18, 2012, agreeing on the methodology for the calculation except as to when interest should start to accrue, and instead gave the Court interest amounts calculated based on the parties' different start dates.  The Court then determined interest accrued from the date the costs were first incurred by AmeriPride, rejecting TEO's argument that such interest did not begin to accrue until the date AmeriPride demanded payment of a specific amount in writing.

///

On April 20, 2012, the Court issued the order containing the determination of the issues at trial, which included the Court's award of interest.  The Court adopted all of the undisputed facts contained in the pretrial order, and entered judgment in accordance with the Court's order on the same day.  The Court ordered TEO to pay AmeriPride $9,974,421.95 and issued a declaratory judgment that TEO is responsible for one-half of all future cleanup costs.

That decision was appealed, and, in April 2, 2015, the Court of Appeals vacated the judgment and remanded with instructions to:

1. Explain which equitable factors the Court considered in allocating the $3.25 million in settlement payments from Chromalloy and Petrolane to AmeriPride, or select those factors and allocate the settlement payments in accordance with those factors in the first instance;

2. Determine the extent to which AmeriPride reimbursed Huhtamaki and Cal-Am for necessary response costs incurred consistent with the NCP; and

3. Apply the interest provisions in CERCLA Section 107(a) to determine when interest began to accrue on the costs paid by AmeriPride (i.e., when the amount was demanded in writing or the date of the expenditure, whichever is later).

Since this Court had previously applied both pro rata and pro tanto methods to allocate settlement costs, the critical issue on remand is which method is proper in this case.

## ANALYSIS

A district court has discretion pursuant to 42 U.S.C. § 9613 to equitably account for settlements between private parties in a contribution action under CERCLA. AmeriPride Services Inc. v. Texas Eastern Overseas Inc., 782 F.3d 474, 487 (9th Cir. 2015).  There are two basic approaches for exercising this discretion.  Under the UCATA's pro tanto approach, the liability of a non-settling defendant is reduced by the

dollar amount of settlements previously obtained by the plaintiff.  On the other hand, the UCFA's pro rata approach looks at the settling parties' proportionate share of the liability and deducts that from the total amount of liability, regardless of the dollar amounts of settlements obtained by the plaintiff.  A district court abuses its discretion if it chooses a method that would discourage settlement, is inequitable, or is inconsistent with CERCLA's goals.  Id. at 488.

In its April 2012 post-trial order, the Court applied the pro tanto approach.  ECF No. 912 at 15.  Plaintiff requests that this Court apply the same approach on remand, arguing that Defendant's expert witness used the pro tanto approach as well and that Defendant's counsel conceded at oral argument that such an approach was proper.  Defendant, however, asks that the Court instead apply the pro rata approach, arguing that the 2007 Order and Judgment's adoption of the pro rata approach with respect to Plaintiff's settlements with Chromalloy and Petrolane makes any later application of the pro tanto approach inequitable.

The Court agrees with Defendant:  adopting the pro rata approach is the most equitable path forward, is consistent with the purposes of CERCLA, and will not deter settlement of this action.  The Court therefore adopts the pro rata approach to apportion liability here.

### A. Application of the Pro Rata Approach Is Not Inequitable.

Before applying the pro tanto approach in April 2012, the Court had already determined that the pro rata approach should govern any allocation of liability between Plaintiff and remaining non-settling parties.  Specifically, the Court found that the application of the pro rata approach would "allow the parties to achieve finality in their settlements" and was warranted by the good-faith nature of the settlements.  ECF No. 638 at 6.  Defendant justifiably relied on this ruling in not challenging the fairness of the settlements, and proceeded to trial accordingly.  AmeriPride, 782 F.3d at 488-89.

Moreover, the Court's adoption of the pro rata approach in 2007 obviated the need for a fairness hearing with respect to Chromalloy and Petrolane's settlements.  If

the Court were to adopt the pro tanto approach now, Chromalloy and Petrolane would be forced to defend their settlements at a fairness hearing eight years after those settlements were reached in order to give Defendant the opportunity to protect its rights. On the other hand, Defendant's rights will be adequately safeguarded without the need for Chromalloy and Petrolane to expend additional funds defending their settlements if the Court adopts the pro rata approach.

Furthermore, application of the pro rata approach will not result in an inequitable outcome for Plaintiff. Plaintiff previously argued for its application in 2007, and in doing so, expressly agreed to assume the risk that its settlements with Chromalloy and Petrolane were less than their share of their liability for the site's contamination. ECF No. 279 at 10. Plaintiff has not argued that applying the pro rata approach will inequitably affect its interests. Accordingly, the Court's adoption of the UCFA's pro rata approach is most consistent with the equitable constraints on the Court's exercise of its discretion.

### B. The Pro Rata Approach Is Consistent With CERCLA's Purposes.

CERCLA's core purpose is the protection of the "public health and environment 'by facilitating the expeditious and efficient cleanup of hazardous waste sites.'" Id. at 487 (quoting Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 888). Its secondary purpose is ensuring that responsible polluters pay for the necessary remediation. Id. As the parties admit in their JSR, cleanup of the site at issue here has been ongoing since 2002. Cleanup continued after the Court adopted the pro rata approach in 2007 and continues today. There is no indication anywhere in the record that cleanup of the site will cease if this Court readopts the pro rata approach. There is therefore no indication that the Court's adoption of the pro rata approach will conflict with CERCLA's core purpose.

### C. The Pro Rata Approach Will Not Deter Settlement.

As Plaintiff recognized in May 2006, the pro rata approach actually encourages settlement of CERCLA claims. ECF No. 279 at 9 (citing Comerica Bank-Detroit v. Allen

Indus., Inc., 769 F.Supp. 1408, 1414 (E.D. Mich. 1991).  The pro rata approach protects non-settling defendants by assuring that their liability will only reflect their portion of the responsibility for cleanup costs.  Id. at 10.  In conjunction with the contribution bar of 42 U.S.C. § 9613, settling defendants are adequately protected as well.  Id.  Furthermore, the pro rata approach negates the need for an evidentiary hearing to determine the fairness and good faith of the settlement, making the settlement process more efficient for both courts and litigants.  In general, therefore, the pro rata approach in no way deters fair settlements.

     More importantly in this case, the Court's re-adoption of the pro rata approach will not deter settlement.  Only TEO remains as a defendant, and neither party has shown that application of the pro rata approach will deter it from settling.  And, as explained more fully in Section A of this Order, the Court's adoption of the pro rata approach at this juncture will not, and cannot, reopen the settlements made in 2007.  Accordingly, the Court acts within its discretion by adopting the pro rata approach.

## CONCLUSION

     For the reasons stated above, the Court will apply the UCFA's pro rata approach to determine the first remanded issue.

     IT IS SO ORDERED.

Dated:  September 25, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT